IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RYAN S. DROLLINGER,<br><br>                    Plaintiff,<br><br>     vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | CV 12–172–M–DLC-JCL<br><br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Ryan Drollinger brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Drollinger protectively filed his application for benefits on December 19, 2008, alleging disability since November 10, 2008, due to a lower back injury, seizures, sleep apnea, knee problems, and anxiety. Tr. 19, 156. After an administrative hearing, at which Drollinger appeared with counsel, an Administrative Law Judge ("ALJ") found that Drollinger was not disabled. Tr. 19-28. The Appeals Council denied Drollinger's subsequent request

PAGE 1

for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-6. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Drollinger was 32 years old at the time of his alleged onset date, and 34 years old at the time of the ALJ's decision.

## I.    <u>Standard of Review</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the

PAGE 2

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.    <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears

the burden of establishing disability at steps one through four of this process.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).    At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity."  20

C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations.  20

C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the

impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ

finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled.  20 C.F.R. §

404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the

severity of any impairment described in the Listing of Impairments, then the ALJ

must proceed to step four and consider whether the claimant retains the residual

functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work,

the burden shifts to the Commissioner at step five to establish that the claimant

can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  <u>Discussion</u>

Following the steps in the sequential evaluation process, the ALJ first found

that Drollinger meets the insured status requirement of the Act through December

13, 2013, and has not engaged in substantial gainful activity since his alleged

onset date.  Tr. 21.   The ALJ found at step two that Drollinger had the following

severe impairments: degenerative disc disease and a seizure disorder.  Tr. 21. At

step three, the ALJ determined that Drollinger did not have an impairment or

combination of impairments that met or medically equaled any impairment

described in the Listing of Impairments.  Tr. 23.  The ALJ also found that while

PAGE 4

Drollinger's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible. Tr. 24. Having done so, the ALJ next determined that Drollinger retained the residual functional capacity to perform a limited range of light work. Tr. 23. The ALJ found that Drollinger could not return to his past relevant work as a heavy equipment operator, material handler, and skidder operator. Proceeding to step five, the ALJ concluded that Drollinger was not disabled because there remained a significant number of jobs in the economy that he could perform, including light level work as a parking lot attendant, and sedentary work as a food and beverage clerk or charge account clerk. Tr. 27-28.

## A. Severe Impairments

Drollinger argues the ALJ erred at step two by not classifying his "depression (adjustment disorder with depressed mood, anxiety disorder) chronic pain syndrome, [and] knee conditions (chronic pain, status post arthroscopic surgery for meniscal tears)" as severe impairments. Dkt. 18, at 8.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that

has no more than a minimal effect on an individual's ability to work.  *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9ᵗʰ Cir. 1988).  The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.

Drollinger string cites to several pages in the record to support his argument that the ALJ overlooked several of his severe impairments, but does not provide any specific argument as to how or why the materials he cites demonstrate that the ALJ's step two assessment was somehow flawed.   The first item he points to is a report by examining psychologist Dr. David Mahoney dated May 8, 2009, in which he diagnosed Drollinger with a "Major Depressive Disorder – Recurrent." Tr. 264.  The ALJ acknowledged Dr. Mahoney's diagnosis and accepted that Drollinger suffered from depression, but found there was no evidence that the impairment caused him anything more than mild limitations.  Tr. 21-22.   The text of Dr. Mahoney's written report supports the ALJ's assessment.   For example, Dr. Mahoney observed that Drollinger "showed appropriate affect" and his mood was only "mildly depressed."  Tr. 260.  And as the ALJ noted, Drollinger reported to Dr. Mahoney that he had strong familial support, a healthy relationship with his fiancé, and several peer friendships.  Tr. 22, 260.  Drollinger does not point to any

evidence that the impairment caused him anything more than mild functional limitations. The ALJ permissibly found that while Drolliner suffered from depression, the impairment was not severe.

Drollinger also cites a June 17, 2010, report by nurse practitioner Marilyn Tenfield-Joyner. Tr. 380. Exactly how Tenfield-Joyner's observations support Drollinger's argument is not clear. In fact, Tenfield-Joyner found that "[p]erhaps because of the pending disability hearing, [Drollinger] and his fiancé seem intent on demonstrating how ill he is." Tr. 380. She noted that Drollinger reported "staying in bed all day because he cannot tolerate anything else, but when we discuss the importance of activity, it develops that he does walk every day and goes to the pool with his family several times a week." Tr. 380.

Drollinger also cites to some treatment notes from his treating orthopedist, Dr. David Sobba. Tr. 313-19. These notes are from late 2002 and early 2003 – approximately six years before Drollinger's alleged onset date in November 2008 – and actually reflect that Drollinger was doing quite well. In February 2003, for example, Dr. Sobba wrote that Drollinger was "in for follow-up of his knee" and was "really not having any problems." He observed that Drollinger had "actually taken his brace off and [was] doing well with really no complaints." Tr. 313. The Court fails to see how Dr. Sobba's records support Drollinger's argument that the

ALJ erred at step two by not categorizing his knee problems as severe.

To the extent Drollinger argues the ALJ erred by not following the special technique for evaluating medically determinable mental impairments, he is mistaken. The special technique requires that an ALJ first determine whether a claimant has a medically determinable mental impairment, and rate the degree of functional limitation in four areas: activities of daily living, social functioning, concentration/ persistence/pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(b)-(c). The ALJ must then determine the severity of the mental impairment based in part on the degree of functional limitation, and "if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. *Keyser v. Commissioner of Social Security*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520a(c)(1)&(2)). The ALJ must document his application of the technique in his written decision by "incorporating the pertinent findings and conclusions based on the technique" and including "a specific finding as to the degree of limitation in each of the functional areas."[1] *Keyser*, 648 F.3d at 725.

The ALJ did just that, specifically finding that Drollinger had no more than

---

[1] Alternatively, the ALJ may "complete a PRTF and append it to the decision." *Keyser*, 648 F.3d at 725. The ALJ did not append a PRTF to the decision in this case.

mild limitations in the first three areas, and no episodes of decompensation.  Tr.
22.  The ALJ's assessment was supported by substantial evidence, including the
report of state agency physician Dr. Robert Bateen (Tr. 266-86) and his decision
adequately documented his application of the special technique

### B.    Medical Opinions

Drollinger argues the ALJ failed to cite sufficient reasons for rejecting the
opinion of his treating and examining physicians, and erred by instead crediting
the opinions of the two state agency reviewing physicians.

A treating physician's opinion is entitled to greater weight than that of an
examining physician on the basis that he has a "greater opportunity to observe and
know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  An
examining physician's opinion in turn "carries more weight than a reviewing
physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  The
weight given a treating or examining physician's opinion depends on whether it is
supported by sufficient medical data and is consistent with other evidence in the
record.  20 C.F.R. § 404.1527(c)(2).

To discount the controverted opinion of a treating physician, the ALJ must
provide "'specific and legitimate reasons' supported by substantial evidence in the
record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information used by the treating physician.  *Andrews*, 53 F.3d at 1041.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Similar standards apply to the ALJ's evaluation of an examining physician's opinion.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).  Where the opinion of an examining physician is contradicted by another doctor, the ALJ can reject it only by citing "specific and legitimate reasons that are supported by substantial evidence in the record."  *Widmark*, 454 F.3d at 1066 (*quoting Lester*, 81 F.3d at 830-31).

While the opinions of non-treating, non-examining physicians may under certain circumstances constitute substantial evidence, this is so only if they "are consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

1. <u>Dr. Thomas Caughlin</u>

Drollinger began treatment with Dr. Thomas Caughlin in April 2006. Tr. 343. Drollinger reported having been in a car accident eight years earlier, and complained of back pain. Tr. 343. Dr. Caughlin found that Drollinger had a decreased range of motion in his back and prescribed pain medication. Tr. 343. Dr. Caughlin saw Drollinger periodically over the course of the next few years, and continued to treat his complaints of back pain with medication. Tr. 249-52. In October 2010, Dr. Caughlin completed a form provided by Drollinger's counsel in support of his disability application. Tr. 383-84. Dr. Caughlin indicated that Drollinger constantly experienced pain and medication side effects that would interfere with his ability to concentrate and pay attention, and would be absent from work more than four days a month. Tr. 383. Drollinger argues the ALJ did not provide adequate reasons for rejecting Dr. Caughlin's opinion, and erred by not incorporating those restrictions into his residual functional capacity assessment.

As the ALJ noted, however, Dr. Caughlin answered the last question on the form he completed in October 2010 by check-marking a response indicating that Drollinger could nonetheless perform light or sedentary work. Tr. 384. The ALJ

found that Dr. Caughlin's response was consistent with the medical evidence, and gave his opinion "significant weight." Tr. 25.

Drollinger argues that Dr. Caughlin likely checked that response in error, because it was not consistent with his opinion that Drollinger would miss at least four days of work every month. But Dr. Caughlin's treatment notes amply support his conclusion that Drollinger was capable of light or sedentary work. In March 2008, for example, Dr. Caughlin noted that Drollinger was "still working heavy equipment" and experiencing some pain, and so continued his narcotic pain medication. Tr. 251. By July 2008, Drollinger reported to Dr. Caughlin that he had found a job driving heavy equipment that did not "jar his back as much" and so he was taking less pain medication. Tr. 250. When Drollinger complained of increased lowed back pain in December 2008, Dr. Caughlin advised him that he needed "to find another way to make a living." Tr. 249. Dr. Caughlin's opinion that Drollinger could perform sedentary to light work was consistent with his treatment notes, which simply reflect that Drollinger could no longer work a heavy equipment operator. The ALJ accepted as much, finding that Drollinger was limited to a limited range of light work and could not return to his medium-level, past relevant work as a skidder operator, material handler, and heavy equipment

operator.[2]

<u>Dr. Bruce Belleville and Nurse Practitioner Rebecca Sturdevant</u>

Nurse practitioner Rebecca Sturdevant examined Drollinger on May 4, 2009. Tr. 256-258. She concluded that "[h]e had significant difficulty with strength and tremor in his right leg, which would limit his ability to stand or walk for more than 5 or 10 minutes at a time," and noted that he "he reporte[d] difficulty sitting for prolonged periods without changing position to keep his lower extremities from going numb." Tr. 258. Ms. Sturdevant advised Drollinger that he "should not be driving with his reports of seizure disorder" and ultimately concluded that "[h]e may be able to work in a very sedentary job where he could change positions frequently, without performing any safety-sensitive functions." Tr. 258. Drollinger argues the ALJ did not provide adequate reasons for discounting Sturdevant's conclusions.

Dr. Bruce Belleville signed off on Ms. Sturdeveant's report, but there is no

---

[2]  In June 2009, Dr. Caughlin completed a half-page form for Drollinger's insurer, on which he filled in a blank indicating that Drollinger had been unable to work since September 2008. Tr. 141. Any error on the ALJ's part in not specifically discussing this form was harmless because  Dr. Caughlin's opinion was conclusory and not supported by any clinical findings. *See e.g. Thomas v. Barhart,* 278 F.3d 947, 957 (9th Cir. 2002) (explaining that an "ALJ need not accept" any opinion that is "brief, conclusory, and inadequately supported by clinical findings.") .

indication that he ever examined Drollinger himself. Nor is there any information in the record describing the level of oversight Dr. Bellevue may have had over Sturdevant. As a nurse practitioner, Sturdevant is not an "acceptable medical source." *See* 20 C.F.R. § 404.1513. Instead, she is an "other source" that the ALJ was permitted to consider pursuant to 20 C.F.R. § 404.1513(d). The ALJ could reject Sturdevant's opinion for "germane" reasons, and was not required to cite the specific and legitimate reasons necessary to reject the contradicted opinion of an acceptable medical source.

The ALJ considered Sturdevant's report, but did not provide any reasons for rejecting it other than to note that she was not an acceptable medical source. Tr. 26. It is worth noting, however, that even Sturdevant believed Drollinger would likely be capable of sedentary work, assuming he could change positions frequently and did not have to perform any safety-sensitive functions. The ALJ provided for Drollinger's apparent need to change positions, right leg weakness, and need to avoid safety-sensitive functions when assessing his residual functional capacity. In particular, he found that Drollinger would require a "sit stand option, in that he must have the option to alternatively sit of stand at will provided that he is not off task for more than 10 percent of the work period." Tr. 23. The ALJ

found that Drollinger was "further limited to occasional foot control operation with his right lower extremity" and "should never climb ladders, ropes or scaffolds" and should avoid exposure to moving machinery and unprotected heights. Tr. 24. The ALJ thus accepted much of what Sturdevant reported, but found based on the vocational expert's testimony that even with his various restrictions, Drollinger could perform unskilled sedentary work as a food and beverage clerk, and unskilled light work as a parking lot attendant. Tr. 27.

### 3. Dr. Mahoney

Clinical psychologist Dr. Mahoney examined Drollinger in May 2009 and diagnosed him with major depressive disorder and pain disorder. Tr. 264. Dr. Mahoney concluded that Drollinger could not "be expected to return to physical labor" but could possibly be trained for other occupations assuming his physical functional ability improved and his pain was treated. Tr. 264. The ALJ gave little weight to Dr. Mahoney's opinion as it related to Drollinger's physical abilities because, as a psychologist, he "was not qualified to express a specialized opinion regarding the claimant's physical capabilities." Tr. 26. This was a permissible basis for discounting Dr. Mahoney's assessment of Drollinger's physical limitations. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to

the opinion of a specialist about medical issues related to his or her area of specialty.")   As discussed above, the ALJ accepted Dr. Mahoney's opinion that Drollinger suffered from depression, but permissibly found based on the evidence of record that the impairment did not significantly limit his ability to perform work related functions.

### D.    Credibility

Drollinger argues the ALJ failed to cite sufficiently clear and convincing reasons for discrediting his testimony.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis:  (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing  *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then

the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Drollinger suffers from degenerative disc disease and a seizure disorder, both of which can reasonably be expected to produce some degree of symptom. Drollinger has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ considered Drollinger's subjective testimony, but found him less than entirely believable in part because the objective medical evidence did not support the level of pain and limitations he alleged. For example, Drollinger testified that he could not work because he could have up to four seizures a week.

Tr. 72-73.  As the ALJ noted at one point in his discussion, however, there was no evidence that Drollinger had been prescribed any anti-seizure medication.  Tr. 23.  The ALJ also found it significant that, notwithstanding his doctor's recommendation, Drollinger never sought an evaluation by a neurologist.  Tr. 25.  While Drollinger indicated "he did not have the money to pay out of pocket for a neurological examination," the ALJ observed there was no evidence that he had attempted to access free or low-cost medical care.  Tr. 25.

Drollinger further testified that his back pain was so severe that he spent most of his days lying down in bed. Tr. 74.  As the ALJ observed, however, many of the medical findings in the record were essentially normal.  Tr. 24-25.  For example, the ALJ noted that Drollinger's straight leg raise tests were negative, he demonstrated a normal range of motion in his neck and shoulders, and a CT scan from July 2010 revealed only mild deformities.  Tr. 24-25.   The ALJ permissibly found that evidence like that undermined Drollinger's testimony as to the debilitating extent of his back pain.  *See e.g. Lingenfelter v.* Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (the lack of objective medical evidence is an appropriate factor for the ALJ to consider in evaluating credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

To the extent Drollinger claimed he was unable to work, the ALJ found the fact that "there were no opinions from any treating sources that [Drollinger] was unable to work" called his credibility into question. Tr. 25. This too was a permissible basis for the ALJ's adverse credibility determination.

In sum, the Court finds the ALJ cited sufficiently clear and convincing reasons for finding Drollinger's subjective testimony only partially believable.

## E. Lay Testimony

Drollinger next argues the ALJ did not cite germane reasons for discounting the lay testimony provided by his girlfriend and parents.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a

individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Drollinger's parents submitted written statements in support of his application for disability. Tr. 232, 233. The ALJ considered both statements, noting for example that Drollinger's "father reported that he believed his son's pain kept him from doing almost anything" and that Drollinger "would be working at some kind of job if he was able to." Tr. 26, 232. Drollinger's mother similarly "reported that the pain in [Drollinger's] back was too great for him to continue working." Tr. 26. The ALJ permissibly discounted their statements because, for all the reasons set forth elsewhere in his decision, "the medical evidence did not support a finding that [Drollinger] was unable to perform any basic work activities" and because the question of whether Drollinger was "disabled is a

finding reserved for the Commissioner." Tr. 26.

Even if these were not germane reason for discounting the statements of Drollinger's parents, any error on the ALJ's part was harmless. Their written testimony was similar to Drollinger's testimony that he was in so much pain he could not work. Because the ALJ gave clear and convincing reasons for rejecting Drollinger's subjective complaints, and his parents' testimony largely reiterated those subjective complaints, any error on the ALJ's part in failing to provide more germane reasons for rejecting their testimony was harmless. *See See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (ALJ's failure to consider lay witness testimony was harmless where that testimony "did not describe any limitations beyond those" described by the claimant, "which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons.)*; Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's testimony).

The same can be said of the ALJ's failure to specifically address the testimony of Drollinger's girlfriend, Nicole Waller. Waller's testimony was very similar to Drollinger's own testimony. She explained that he had seizures at night

and spent most of his days lying down due to back pain.  Tr. 76-7.  Because Waller described the same limitations to which Drollinger testified, and was thus cumulative of evidence properly rejected by the ALJ, her testimony was inconsequential to the ultimate disability finding and the ALJ's failure to specifically consider it was harmless error.  *Molina*, 674 F.3d at 1122.

## IV.   <u>Conclusion</u>

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error.  Accordingly,

IT IS RECOMMENDED that the Drollinger's motion for summary judgment be DENIED, the Commissioner's motion for summary judgment be GRANTED, and the Commissioner's decision be affirmed.

DATED this 30th day of August, 2013

Jeremiah C. Lynch
United States Magistrate Judge